EXHIBIT A

# PURE FISHING, INC.
## 2023 ELITE DISTRIBUTOR AGREEMENT
## Big Rock Sports
### STANDARD TERMS & CONDITIONS OF SALE



**ENTIRE AGREEMENT.** The party to whom goods are being sold, either by means of electronic data interchange or a traditional paper transaction is "Distributor." Pure Fishing, Inc. is "Seller." In the event of conflict between the terms and conditions stated herein (together with the Appendices attached hereto, the "Agreement") and those contained in any other proposal, purchase order, acknowledgement, or writing, this Agreement shall control. Pre-printed terms on any purchase order submitted by Distributor shall be of no force or effect. Any change to or addition of the Agreement must be in a separate writing and signed by both parties hereto.

Distributor may only sell Pure Fishing Products to independent "brick and mortar" retail locations that achieve no more than 49% of their sales through e-commerce. It is a specific violation of this Agreement to sell Pure Fishing Products to (a) other Distributors (b) National Accounts (c) any entity that achieves at least 50% of its sales through e-commerce, or (d) directly to consumers, without the specific written authorization from Pure Fishing. Pure Fishing additionally requires Distributor to publish the current Pure Fishing MAP Policy to all of Distributor's customers and obligates Distributor to unilaterally and uniformly police and enforce the Pure Fishing MAP Policy with its customers in accordance with its terms. Failure to abide by these restrictions will result in termination of this Agreement.

It is the policy of Seller to unilaterally refuse to supply Pure Fishing products and programs to a Distributor for any or no reason, including without limitation a Distributor that does not provide value added services to consumers in support of Pure Fishing brand positioning. Seller also reserves the right to restrict resale from Distributor to retailers that do not provide such value added services.

1. **TERM OF AGREEMENT.** The term of this Agreement is January 1, 2023 through December 31, 2023, unless either party gives the other written notice of termination at least thirty (30) days prior to the end of the then current term.
2. **SELLER'S TERMS PREVAIL.** THE PURCHASE OF SELLER'S GOODS IS EXPRESSLY CONDITIONED ON DISTRIBUTOR'S ASSENT TO THIS AGREEMENT. ANY ADDITIONAL AND/OR DIFFERENT TERMS AND CONDITIONS ARE HEREBY EXPRESSLY REJECTED. ALL ORDERS ARE SUBJECT TO ACCEPTANCE BY SELLER, AND MAY BE CANCELLED BY SELLER UPON REASONABLE NOTICE.
3. **ASSIGNMENT.** Distributor shall not assign any sales order or any part thereof including, but not limited to any obligations to make any payment(s) due or to become due hereunder, without the written consent of Seller.
4. **PRICES.** Distributor agrees to the prices and terms set forth in the Appendices hereof. Prices and terms are subject to change without notice.
5. **PAYMENT.** TIME IS OF THE ESSENCE for Distributor to pay Seller for the goods. In the event Distributor fails to make timely payment on one or more of Seller's invoices, Seller shall have the right to accelerate all outstanding payments Distributor owes to Seller and make such payments immediately due and payable, regardless of payment terms. The terms are calculated from date of shipment of goods from Seller's distribution center. Seller reserves the right to require payment by letter of credit, C.O.D. or other suitable payment terms and otherwise modify credit terms or to suspend production, shipment or delivery. When partial shipments are made, payments for such partial shipments shall become due in accordance with the terms stated herein. Seller does not ship



any merchandise on consignment. The extension of any credit terms to Distributor shall be subject to the approval of the Seller's credit department

6. **PURCHASE MONEY SECURITY INTEREST.** To secure the performance of its obligations hereunder, Distributor hereby grants to Seller a security interest in all of its inventory of goods purchased hereunder for which Seller has not received payment pursuant to Section 6 hereof ("Secured Inventory"). Distributor warrants that all Secured Inventory will be owned by Distributor free of all other liens, security interests, and encumbrances that are prior to that of Seller. All of the Secured Inventory will be kept at the facilities, the addresses of which will be delivered to Seller at its request; but Seller's lien and security interest will be maintained despite the location of the Secured Inventory. Except for sales made in the regular course of business, Distributor shall not sell, encumber or dispose of or permit the sale, encumbrance or disposal of any Secured Inventory of goods without the prior written consent of Seller. In the event that Distributor sells Secured Inventory in the regular course of business, Distributor shall identify other inventory of value equal to that of the sold Secured Inventory as collateral for the security interest, which inventory then will be treated as Secured Inventory under this Paragraph 6. Distributor agrees to execute any instruments requested by Seller from time to time for purposes of further evidencing such security interest or notifying third parties by recordation or otherwise of such security interest.

7. **UNAUTHORIZED DEDUCTIONS.** Seller will not recognize, honor, reimburse or otherwise pay any deduction or penalty policies of Distributor other than that expressly set forth and agreed to in a fully executed agreement or that set forth in this Agreement. Should Distributor take an unauthorized deduction from a payment to Seller, Seller will reject the claim as invalid. Distributor will repay any such deduction immediately upon notification from Seller plus ten percent (10%). Unauthorized deductions that are not immediately repaid will be deducted from any available credits due Distributor, including but not limited to, agreed upon merchandise returns or allowances. Seller reserves the right to suspend shipments to Distributor until the unauthorized deduction(s) is repaid in full.

Fines/Penalties/Chargebacks. If fines, penalties, or chargebacks are agreed to between the parties, Seller must receive notification of non-conformance within fifteen (15) days of shipment receipt. The following information and documentation is required upon notification:
- PO number, Shipment ID, Delivery number, and/or carton ID(s)
- A detailed description of non-conformance.
- Examples of supporting documentation could include BOLs, delivery receipts, freight bill, pictures when applicable, a copy of shipping requirements or vendor guide, etc.

8. **RIGHT TO AUDIT.** Any disputes by Distributor shall be submitted to Seller in writing with proper documentation within one year of the invoice date. Distributor hereby waives the right to make any claim more than one year after the date of the invoice at issue.

9. **TAXES.** Prices do not include any state or sales, use, or similar taxes. In addition to the prices specified, the amount of any applicable sales, use, or any other tax required by law shall be paid by Distributor. Seller will honor Distributor's valid tax exemption certificate in determining any applicable taxes.

10. **DOMESTIC FREIGHT TERMS.** Freight terms (and applicable minimum orders) are as specified in this Agreement. Seller's only offered freight terms are, to be agreed to by the parties in writing in advance:
    a. <u>Freight Prepaid, FOB Destination.</u> Seller bears the expense of freight charges to the named destination on Distributor's purchase order. Shipments will be loaded and counted by Seller ("Shipper Load, Shipper Count"). Any requested changes to the ship to destination or re-consignment of the freight after goods have shipped will be charged to the Distributor. Seller retains the right to route the shipment via the carrier of its choice, regardless of any instructions from Distributor to the contrary. Title to the goods passes to Distributor upon delivery at the



Distributor's designated location. Should the Distributor refuse to take delivery of the shipment at the named destination for any reason, Distributor will be responsible to reimburse Seller for both outbound and return freight expense, in addition to any restocking fees as may be assessed by the Seller.

  b. <u>Freight Collect, FOB Origin</u>. Distributor bears the expense of freight charges to the named destination on Distributor's purchase order. Shipments will be loaded by Seller and the count verified by Distributor's carrier agent ("Shipper Load, Driver Count"). Distributor instructions for carrier selection should be submitted with their purchase order or separately via a Distributor provided Routing Guide acceptable to Seller. Seller will not be held responsible for misrouting a shipment if changes to Distributor's carrier instructions were made or received by Seller after the planning and scheduling of, or the actual shipment of an order. Title to the goods passes to Distributor at the time of pick up by Distributor's carrier agent (which may be an intermediary carrier) at Seller's origin location. Should the Distributor refuse to take delivery of the shipment at the named destination for any reason, Distributor will be responsible for both outbound and return freight expense, in addition to any restocking fees as may be assessed by the Seller.

11. **IMPORT FREIGHT TERMS.** Seller may offer merchandise for sale on a direct import basis. Seller's only offered terms are, to be agreed to by the parties in writing in advance:
  a. <u>FOB, Named Port in Country of Origin</u>. Seller's agent in the country of origin bears the expense of moving the container(s) to the named port in the country of origin. Distributor bears the expense of any applicable merchandise duty fees as well as ocean and U.S. inland freight charges to Distributor's final destination. Shipments will be loaded, counted and the container(s) sealed by Seller's agent ("Shipper Load, Shipper Count") in the country of origin. Title to the goods passes to Distributor upon delivery of the goods on board the ocean carrier's vessel, or if an intermediary carrier such as a freight forwarder is arranged for, at the time of pick up by Buyer's carrier agent.
  b. <u>DDP, Named U.S. Port</u>. Seller bears the expense of any applicable merchandise duty fees as well as ocean and U.S. inland freight charges to the named U.S. Port on Distributor's purchase order. Shipments will be loaded, counted and the container(s) sealed by Seller's agent ("Shipper Load, Shipper Count") in the country of origin. Seller retains the right to route the shipment via the carrier of their choice, regardless of any instructions from Distributor to the contrary. Title to the goods passes to Distributor upon delivery at the Distributor's designated U.S. port.
  c. <u>DDP, Named U.S. Destination</u>. Seller bears the expense of any applicable merchandise duty fees as well as ocean and U.S. inland freight charges to the named U.S. destination on Distributor's purchase order. Shipments will be loaded, counted and the container(s) sealed by Seller's agent ("Shipper Load, Shipper Count") in the country of origin. Seller retains the right to route the shipment via the carrier of their choice, regardless of any instructions from Distributor to the contrary. Title to the goods passes to Distributor upon delivery at the Distributor's designated U.S. location.

12. **FREIGHT SHORTAGES OR DAMAGES.** It is the Distributor's obligation to submit claims for damages or shortages directly to their contracted carrier for any shipments made under FOB origin, freight collect terms or FOB, named place in the country of origin terms. Seller may submit loss and damage claims to its contract freight carrier for shipments made under FOB destination, freight prepaid terms; DDP, named U.S. port terms; or DDP, named U.S. destination terms provided the following conditions are met: (i) Distributor's receiving department details visible shortage or damage on delivery receipt at time of delivery; and (ii) on both visible and concealed shortage/damage, Distributor forwards the below required applicable information within 30 (thirty) days of delivery.



**Procedure for Shipping Discrepancies and Damaged Merchandise on Delivery Receipts.** In order for Seller to reimburse claims for any damages, shipping overages, or shortages, the following procedure must be followed:
1. Inspect shipments upon delivery:
   a. Verify delivery address and PO# are correct
   b. Check piece count against PO and delivery receipt
2. Inspect the product inside the carton to determine actual damage
3. Write a proper exception notation on delivery receipts by documenting any damages or discrepancies on the freight bill (proof of delivery).
   a. Verify carton count matches freight bill
4. Permit only the person who inspected the freight to sign the delivery receipt
5. Retain all packaging until a claim has been settled
6. Check seals on trailer doors upon arrival for Full Truck Loads
7. Seller must be notified in writing of any damages, overages, and shortages within 30 days of delivery receipt
8. Contact Customer Service or our Returns Specialist to provide the following information:
   a. Description of the issue
   b. Ship notice, or Seller Delivery number (found on ASN or Packing List)
   c. Customer Name and Account number
   d. Item/Product number and Quantities
   e. Contact:
   Returns Specialist
   Fax#:  712-336-8549

   Customer Service Support
   US Phone#: 1-877-777-3411
   Canada Phone# 1-888-750-0105
   Email:  Services1@purefishing.com
   Hours: 8am - 530pm EST; Mon-Fri

**Fines or replacement shipments will not be recognized by Seller if adherence to all of the above are not followed.**

13. **DELIVERY.**  Shipping dates are approximate. Seller will ship promptly on receipt of each order. Seller will use its reasonable best efforts to fill all orders according to their terms. However, if any conditions arise which prevents compliance with the delivery schedule, Seller shall not be liable for damages, general, incidental, consequential, compensatory or otherwise, or for failure to give notice of any delay and Seller shall have such additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it considers equitable. Seller shall also have the right to deliver the goods in installments including but not limited to, shipping from multiple origins.
14. **RIGHT TO CANCEL**.  Seller is under no obligation to grant Distributor's request to cancel or change quantities on previously submitted and accepted orders.  If in its sole discretion, Seller allows Distributor to cancel all or a portion of an order and the work, shipment preparation, labeling or loading has already begun or is complete, Seller reserves the right to charge the Distributor restocking fees.
    a. Hold to Confirm Orders ("Booking Orders").  Seller will accept Booking Orders for mutual planning of future shipments to Distributor.  Booking orders may not be changed within 15 (fifteen) days of shipment, including but not limited to, changes to the quantity ordered or the mix of goods ordered.  The requested ship date on Booking Orders may not be changed.  At no time may the value of the Booking Order be changed by virtue of quantity reductions, substitutions or item cancellation, so as to reduce the overall value more than 10% (ten percent) of the original submitted value.



b. <u>Direct Import Orders</u>.  Direct import orders may not be changed within 90 (ninety) days of shipment, including but not limited to, changes to the ship window, quantity ordered or the mix of goods ordered.

15. **PROPRIETARY GOODS.**  Seller may agree to produce or procure Special Make Up ("SMU") goods for Distributor.  SMU goods may include but are not limited to a unique color, carton markings, design or combination of multiple finished goods sold as a single selling unit.  Distributor and Seller will collaboratively plan the lead-time production and sales forecast for the SMU items.  Seller will produce or procure the forecasted quantities. Distributor agrees to purchase the total amount of SMU goods forecasted for the calendar year.  If Distributor's orders have not consumed the forecast for the SMU items by December 1st of the given year, Distributor will immediately place an order for the balance to ship from Seller by the end of the calendar year. No product returns will be accepted on proprietary merchandise.  In the event of excess and aging inventory remaining with Seller resulting from Seller's good faith reliance upon Distributor's written forecast or other written commitments for which Distributor has not issued a purchase order, provided that Distributor shall be given a first right of refusal to purchase any such inventory.

16. **SALE OF EXCESS OR OBSOLETE GOODS.**  Seller may offer from time to time, close out purchases of excess, obsolete or discontinued goods ("E&O").  Orders for E&O goods are filled on a first come, first served basis.  To secure the E&O goods, Distributor must submit a non-cancelable order before any other customer's order for the same goods.  Distributor understands and agrees that the sale of E&O goods are "AS IS, WHERE IS."  No product returns will be accepted on merchandise purchased on a close-out basis.

17. **NO EXPORT OF GOODS.**  Distributor agrees and represents that the goods sold hereunder are sold solely for use and consumption within the United States of America and are not for export, regardless of method of sale including Internet sales. Distributor further understands that Seller's consumer warranty is only valid for consumers within the United States unless Seller has explicitly stated otherwise in writing.  Distributor is aware that the goods comply with federal, state and local regulations and laws in the United States and unless stated otherwise on the product, are not designed to comply with the requirements for sale in any other jurisdiction.  If Seller is made aware, through any means, that Distributor is exporting goods purchased from Seller within the United States without the express written consent of Seller, Seller reserves the right to cancel all outstanding orders from Distributor and to refuse all future orders.

18. **PRODUCT RETURNS.** Merchandise in new condition, including but not limited to overstock, shelf worn or shelf damaged goods, or previously unsold obsolete goods may not be returned to Seller without prior written authorization properly issued by Seller. Unless otherwise agreed upon in writing, prior written authorization is required to return defective and non-defective goods.  If a request to return non-defective or defective goods is approved by Seller, Seller will provide Distributor a Return Authorization ("RA") including shipping and routing instructions, authorized product part numbers and quantities, an itemized packing list, as well as any other special instructions. Any shipment received by Seller without a valid RA may be refused at Seller's sole discretion. Non-defective and defective product return request must have separate RA numbers for each.  Each RA must be packed separately even if both RAs are returned at the same time.
    - An RA will become void if the goods in question are not received by Seller within thirty (30) days from date of issue.
    - The product return shipment must not include goods or quantities exceeding than those authorized on the Seller RA or itemized packing list.  Credit will not be issued for products received that exceed authorized quantities or for items not included on the authorized Seller itemized packing list.  Under no circumstance will any overages or unauthorized items/quantities included in a shipment be credited or returned to the Distributor.
    - Return claims and questions concerning goods that were not purchased directly from Seller should be directed to the seller from whom the goods were purchased from.



- No returns will be accepted on merchandise purchased on a close out basis. In addition, no returns will be accepted on direct import and SMU merchandise.
- If Seller determines that a return does not meet the conditions outlined herein, credit will be denied and the merchandise will not be returned to the Distributor.
- Credit for Returns:
    - No credit will be issued for merchandise purchased from Seller outside a period of 2 (two) years. Product deemed not used due to store damage, mishandling, abuse or product intentionally broken cannot be returned.
    - Cost determination when credit is issued will be at the most recently purchased price net of all discounts from Seller or at the current price net of all discounts, whichever is lower.
- Contact for RA requests or questions regarding product returns:

  Returns Specialist  
  Fax#: 712-336-8549

  Customer Service Support  
  US Phone#: 1-877-777-3411  
  Canada Phone# 1-888-750-0105  
  Email: Services1@purefishing.com  
  Hours: 8am - 530pm EST; Mon-Fri

In certain circumstances, Seller may issue return labels or pay the freight charges for authorized returns provided the Distributor uses Seller's designated freight carrier. Shipments must be returned freight collect via Seller's preferred carrier only from the authorized origin destination of Distributor indicated on the RA unless other arrangements have been made (i.e. defective allowance, as set forth in Appendix C if applicable). If Seller's designated carrier is not used or if Distributor returns goods from multiple origins on multiple shipments, not indicated on the RA, Distributor will be responsible for all freight charges. Unless otherwise agreed, Seller will not accept any additional charges from the Distributor associated with the return including special handling fees or storage fees.

Return Procedure.
- For authorized non-defective merchandise returns:
    - Seller must receive all non-defective merchandise in saleable condition. Product must be in Seller case pack multiples, in its original packaging, and free of any labels, added markings or tags.
    - Non-defective returns must be packed appropriately to avoid damage during shipment.
- Restocking Fee: A return of non-defective merchandise will be subject to a 15% restocking fee. The restocking fee will be deducted from credit issued from the approved RA.

  In the case where Seller authorized return labels have been issued, these labels must be placed on each carton with the carton count noted on the labels or the inbound shipment to Seller will be refused and returned to the Distributor, freight collect.

19. **TERMINATION.** This Agreement may be terminated at any time by one or the other Party upon thirty (30) days written notice, without limiting the obligations of either party in respect of unfilled orders that have been accepted by Seller. Either party may terminate this Agreement and cancel all pending orders immediately upon written notice if the other party is in material breach of this Agreement and has not cured within fifteen (15) days of receiving notice, or if the other party becomes insolvent, a petition in bankruptcy is filed by or against the other party, or the other party makes an assignment for the benefit of its creditors; or a receiver or trustee is appointed for any of the other party's property. Upon termination of the Agreement, Distributor shall promptly and in good faith (i) return to Seller, at Distributor's expense, any information owned and/or used by Seller including but not limited to Seller's product literature, stickers, pamphlets, technical, financial and any other business information provided by Seller; (ii) upon demand by Seller (which decision will be in Seller's sole discretion), convey good and clear title to Seller of all of Seller's products owned



by Distributor which Seller elects in writing to repurchase, at a repurchase price equal to Distributor's landed cost, and such goods shall be undamaged, unopened and saleable as new product; (iii) cease any and all use of the Trademarks (except for the sale of products already owned by Distributor as authorized under this Agreement); and (iv) immediately discontinue any mode of communications on the internet directly or indirectly relating to Seller's products and immediately take all steps required by Seller to transfer any domain name associated with the Seller's products or Trademarks to Seller.  Notwithstanding anything else set forth herein to the contrary, neither party shall be liable to the other party for any losses or damages arising as a result of the expiration, termination or non-renewal of this Agreement, including any expenditures, investments or commitments made by such other party in connection with this Agreement or any party's lost business, lost profits, or lost goodwill resulting from such expiration, termination or non-renewal. The provisions of Sections 8, 18, 20-30 (inclusive) shall survive any expiration or termination of this Agreement in accordance with their terms. All other provisions of this Agreement shall have no further effect upon the termination or expiration of this Agreement; provided that termination or expiration of this Agreement shall not release, limit or affect any rights, remedies or obligations of any party, including but not limited to payment obligations, accruing or arising prior to expiration or termination.

20. **INDEMNIFICATION.** Distributor shall indemnify, defend and hold Seller harmless from and against any and all third-party claims, damages (including incidental and consequential damages), losses, costs and expenses (including reasonable attorneys' fees) which Seller may suffer or incur arising out of: (i) any breach of the terms and conditions herein by Distributor; (ii) any acts or omissions by Distributor, its employees, agents or subcontractors; (iii) any alteration(s) to the goods not authorized by Seller; (iv) Distributor's removal of or failure to include any and all instructions and warnings regarding the goods and provided by Seller; (v) Distributor's oral or written instructions or warnings inconsistent with those provided by Seller; (vi) goods that have been damaged by Distributor or those that have been damaged by a consumer and/or returned by a consumer after a retail sale; and/or (vii) Distributor's or Distributor's customer's failure to comply with all applicable laws, rules, regulations or ordinances.

21. **WARRANTIES.** Seller warrants: (i) that the goods delivered pursuant hereto are manufactured in accordance with applicable laws and regulations; and (ii) that Distributor, upon full payment of the purchase price therefor, will receive title to the goods. Seller may provide the retail purchaser of the goods with a consumer warranty, as set forth in the packaging or labeling of such goods. SELLER MAKES NO OTHER WARRANTY, EITHER EXPRESS OR IMPLIED, WITH REGARD TO THE GOODS DELIVERED PURSUANT HERETO.  SELLER EXPRESSLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL SELLER BE RESPONSIBLE TO DISTRIBUTOR OR TO ANY PARTY FOR INCIDENTAL, CONSEQUENTIAL, LOST PROFITS, SPECIAL OR PUNITIVE DAMAGES, EVEN IN THE EVENT OF BEING ADVISED AS TO THE POSSIBILITY OF SUCH DAMAGES OR LOSSES.  THESE LIMITATIONS WILL APPLY TO ALL CLAIMS, INCLUDING WITHOUT LIMITATION WARRANTY, CONTRACT, INDEMNITY, TORT (INCLUDING NEGLIGENCE) OR STRICT LIABILITY.
Seller's sole responsibility and Distributor's exclusive remedy for breach of this warranty shall be the offer of an update for or the repair or replacement of such products or, if neither of the foregoing is feasible in Seller's reasonable discretion, refund of the purchase price paid for such products less cost to ship goods to and from Distributor. Except for Consumer Warranty, as defined herein, accompanying the products, this warranty and the remedies identified herein is in lieu of all warranties, terms or conditions, express or implied, either in fact or by operation of law, statutory or otherwise, including warranties, terms or conditions of merchantability, fitness for a particular



purpose and satisfactory quality. Distributor acknowledges and agrees that any warranty, guaranty or similar statement on the package of any Product or in the literature accompanying any product (each, a "Consumer Warranty") are solely for the benefit of the ultimate consumer purchasing the products, and shall not apply to Distributor with respect to any products purchased by Distributor pursuant to this Agreement. Distributor hereby waives and agrees that it will not assert any claims under such Consumer Warranty. Distributor will make no warranties to a purchaser or consumer of any product additional to the Consumer Warranties made by Seller in respect of such product, and will indemnify Seller and hold Seller harmless from and against any losses, costs, damages or expenses which Seller may sustain or incur on account of any such additional warranties made by Distributor.

22. **EFFECTIVENESS.** Any term(s) or condition(s) set forth herein which is/are invalid or unenforceable shall be ineffective only to the extent of such invalidity or lack of enforceability and shall not render invalid or unenforceable the remaining terms and conditions.

23. **FORCE MAJEURE.** Neither party shall be considered in default hereunder or be liable for any failure to perform or delay in performing any provisions of this Agreement in the customary manner to the extent that such failure or delay shall be caused by an act of God; fire, explosions, hostilities or war (declared or undeclared); or striking or work stoppage involving its employees. In the event of such failure to perform or delay, the parties shall use every reasonable means to resume full performance of this Agreement as promptly as possible.

24. **LAW/DISPUTE RESOLUTION.** The rights and duties of the parties to this transaction shall be determined by the laws of the State of South Carolina without regard to conflict of law principles. Any and all disputes arising in connection with this transaction shall be decided in a federal or state court located in Richmond County in the State of South Carolina. Distributor hereby consents to in personam jurisdiction in a court of competent jurisdiction in the County of Richmond, State of South Carolina. Distributor hereby further agrees not to raise any defense to such jurisdiction, including but not limited to the defenses of forum non-conveniens and improper venue.

25. **NOTICES.** Any notice required or permitted by this Agreement shall be in writing, in English and delivered by overnight commercial courier (such as FedEx) providing proof of delivery, addressed as follows (or to such other addresses as may be designated by notice from one party to the other):

    To Distributor:
    Big Rock Sports
    1141 Jay Lane
    Graham, NC 27253

    To Seller:
    Pure Fishing, Inc.
    7 Science Court
    Columbia, SC 29203
    Attn:

26. **CONFIDENTIALITY.** Distributor shall hold the terms and conditions of this Agreement, including but not limited to the pricing, offered discounts, other specifics or selling and distribution practices or methodologies of Seller confidential for any and all purposes excepting those purposes necessary to the fulfillment hereof. Distributor shall safeguard Distributor's Confidential Information with the same degree of care it uses to safeguard its own proprietary and confidential



information but, in no event, shall use less than a reasonable degree of care. Distributor shall promptly notify Seller of any actual or suspected misuse or unauthorized disclosure of Seller's Confidential Information. Distributor agrees that the terms of this Agreement shall also constitute Confidential Information.

27. **INTELLECTUAL PROPERTY**. Distributor acknowledges and agrees that Seller and/or Seller's affiliates are the sole and exclusive owners of all trademarks, trade dress and trade names used by Seller and its affiliates in relation to the products sold hereunder (collectively, the "Trademarks"). Any use of the Trademarks by Distributor shall be made only with Seller's prior written approval and solely in connection with the advertising, promoting or selling of the products and any such use shall inure to the benefit of Seller and/or its affiliates. In no event shall Distributor or its affiliates file any application to register a trademark or a domain name or use any trademark, domain name, business name or trade style that incorporates or is confusingly similar to any of the Trademarks. If Distributor files any application of any kind that incorporates or is confusingly similar to any Trademark, it shall immediately transfer such application or any rights derived therefrom to Seller or an affiliate as designated by Seller. Violation of this Section is considered a material breach on behalf of Distributor which gives Seller the right to immediately terminate the Agreement and cancel all pending orders.

28. **RELATIONSHIP OF THE PARTIES**. parties are each independent contractors and neither party is an employee, agent, representative, partner, or joint venturer of the other or has any authority to assume or create any obligation or liability of any kind on behalf of the other.

29. **FAILURE TO ENFORCE AGREEMENT**. Failure by Seller at any time or from time to time to enforce or require strict observance and performance of any term or condition of this Agreement will not constitute a waiver of or affect such term or condition in any way, nor shall such failure affect the right of either party to avail itself at any time of such remedies as it may have for any breach of such terms or conditions by the other party.

IN WITNESS WHEREOF, each of the parties has caused this Agreement in duplicate to be duly executed by their respective authorized representatives. Each executed copy shall remain in possession of each party hereto.



**On behalf of Pure Fishing, Inc.**

_____
Signature

**Larry Tankersley**
_____
Printed Name

**National Account Manager BRS**
_____
Title

**4/27/2023**
_____
Date

**On behalf of Big Rock Sports**

_[signature]_
_____
Signature

Ryan Link
_____
Printed Name

GMM
_____
Title

rlink@bigrocksports.com
_____
Email Address

5-31-23
_____
Date

            

Confidential                                              Page 10

# ELITE DISTRIBUTOR
# APPENDIX
# A

## ORDER REQUIREMENTS FOR ALL PRODUCTS

- Standard Terms: Net 60 days
- Warehouse Minimum order "Net Value" Requirement: $1000.00
- All products must be ordered as "eaches" but in case pack multiples. The product quantity will be adjusted to meet case pack requirement.
- Revisions or additions to order(s) may not be made to the order(s) once it is in process for shipping or has been shipped against.
- Subject to MAP limitations set forth herein.

**Back orders.** Any product(s) not available upon order's requested shipping date will be placed on backorder and can be cancelled from the order without notification once total backorder value is less than $75.00

**Freight Terms.**
- Prepaid freight on orders $5,000.00 and above, per "ship to" address.
    - If **Plano/Frabill** products are ordered along with Pure Fishing legacy products and the combined order total is equal to or greater than $5,000, the Plano Frabill portion of the order must be $1,500 or more and will be freight prepaid as well as the PF legacy portion. If the Plano/Frabill order is a stand-alone order, the $5,000 prepaid freight requirement applies.
    - If **Savage Gear** products are ordered along with Pure Fishing legacy products and the combined order total is equal to or greater than $5,000, the Savage Gear portion of the order must be $250 or more and will be freight prepaid as well as the PF legacy portion. If the Savage Gear order is a stand-alone order, the $5,000 prepaid freight requirement applies.
- Seller will determine the method of transportation and the carrier that will be used on all shipments where Freight is prepaid by Seller.
- Freight will be determined based on the net value of the order and added to the invoice accordingly as shipping and handling

| Freight Table | | |
|---|---|---|
| Min value | Max value | Freight |
| $1.00 | $249.99 | $ 12.50 |
| $250.00 | $499.99 | $ 25.00 |
| $500.00 | $749.99 | $ 37.50 |
| $750.00 | $999.99 | $ 50.00 |
| $1,000.00 | $1,249.99 | $ 62.50 |
| $1,250.00 | $1,499.99 | $ 75.00 |
| $1,500.00 | $1,749.99 | $ 87.50 |
| $1,750.00 | $1,999.99 | $ 100.00 |
| $2,000.00 | $2,999.99 | $ 120.00 |
| $3,000.00 | $4,999.99 | $ 200.00 |

**Distribution Processes.**
- Multiple SKUs will potentially be mixed in a carton
- Any required UCC-128 labels will be placed 2 inches up over from the right hand corner of the longest side of the carton.
- Multiple POs will potentially be consolidated to ship on the same pallet.
- The following pallet sizes will potentially be utilized to ship freight sized shipments:
    - 40X48
    - 42X60
    - 42X92
    - 42X110



## ELITE DISTRIBUTOR
## APPENDIX
### A- Cont'd

Address questions concerning information contain herein or in reference to order requirements or distribution processes prior to shipment.

_____        5-31-23
**Distributor's**        **Date**
**Initials**



# ELITE DISTRIBUTOR
# APPENDIX
# B

## VOLUME REQUIREMENT/DISCOUNT STRUCTURE

**Annual Volume Requirement:**

$15,000,000.00

**2023 Discount Structure:**

| | |
|---|---|
| **Penn Round/Conventional Baitcast Reels & Combos | 10% |
| **Abu Garcia Round/Conventional Baitcast Reels | 10% |
| All Rods | 15% |
| All Reels (Excludes ** above) | 15% |
| All Combo's (Excludes ** above) | 15% |
| Storage- Plano & Frabill | 10% |
| Tools & Equipment (includes Gloves & Lighting, Excludes Frabill) | 25% |
| Eyewear | 25% |
| Terminal Tackle | 20% |
| Baits | 20% |
| Fishing Line | 20% |
| Apparel & Footwear | 15% |

_[signature]_    5-31-23

**Distributor's Initials**    **Date**



## ELITE DISTRIBUTOR
## APPENDIX
## C

### Defective Allowance

**2023 Defective Allowance:**
    1.    **1.9% All Brands All Categories**

### Select One

    _____ Rebate from Each Invoice (Discount applied on invoice at header level)

    _____ Rebate from Each Invoice (Discount applied on invoice at item level)

    **X** Credit Memo Issued Quarterly

The resale of defective product by Distributor is prohibited.

If an agreement executed by the Distributor and Seller provides for a "Defective Allowance", then Seller will not be required to accept returns of Seller's products which have been returned due to isolated instances of products damaged during shipping, or defective products.

Please ensure proper documentation or notation of any damages or discrepancies upon receipt of shipment is made on the freight bill (proof of delivery) as per instructions provided herein for Freight Shortages and Damages. Claims for damages not conforming to this will not be authorized and therefore will fall under the conditions of your defective allowance/agreement.

_[signature]_        5-31-23
**Distributor's**      **Date**
**Initials**

## APPENDIX
## D

### TRADE FUNDING



## 2023 Trade Funding:
- **Supplemental Sales Agreement Funding will be at 2.226% of Invoiced Sales**
- **Big Rock Sports Show (Expo) Booth funding will be at .774% of Invoice Sales.**
- **Credit Memo Issued Quarterly**

# 2023 Pure Fishing Supplemental Sales Funding Agreement

The Supplemental Sales Agreement for calendar year 2023 is a funding program available to Big Rock Sports to support Sales and Marketing activities. The funding is based on 2023 Annual invoiced sales target of $22,259,401 at 2.226% or $495,494.27. The accrued funds will be credited to Big Rock Sports at the end of each quarter in 2023 based on Invoiced shipments. These credits will be issued within 60 days after the close of the quarter. The agreed spending of these funds is outlined in the schedule below.

In addition to the Supplemental Sales Funding at 2.226%, Pure Fishing will accrue $172,287 at .774% for Big Rock Sports Show Booth Expenses. These funds will be credited as each show event is committed for. The Show fund is allocated for: Big Rock Sports Southeast Expo, Big Rock Sports Midwest Expo and the January 2023 Big Rock Sports Nashville Outdoor Expo.

Combined Supplemental funding is equal to 3% of the 2023 Sales target of $22,259,401 for a total Supported Pure Fishing funding of $667,782 in 2023.

Big Rock is to provide justification documents to support the outlined spend.

**See Attached Sales Funding Schedule**

## 2023 Volume Incentive
*Big Rock and Pure Fishing will Reevaluate Volume Goals and Incentive Tiers during our ICAST Meeting in Orlando*

|  | 2023 Incentive Tier's | | |
| --- | --- | --- | --- |
|  | 0.25% | 1.50% | 0.75% |
| Volume goal | $ 19,000,000 | $ 22,259,401 | $ 23,372,371 |
| Volume Incentive | $ 47,500 | $ 381,391 | $ 556,684 |

_____        5-31-23
**Distributor's Initials**        **Date**

